UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>                              Plaintiff,<br><br>                -against-<br><br>NARIS CHAMROONRAT, YANIV AVNON, RAN ARMON, G SIX TRADING Y.R LTD., and ADAM L. PLUMER,<br><br>                         Defendants,<br><br>              -and-<br><br>NKO HOLDINGS CO. LTD.,<br><br>                   Relief Defendant. | No. 16-CV-9403-KM-JBC<br><br>[PROPOSED] FINAL<br><br>JUDGMENT<br><br>AS TO DEFENDANT<br><br>NARIS CHAMROONRAT |

The Securities and Exchange Commission having filed a Complaint and Defendant Naris Chamroonrat ("Defendant") having entered a general appearance; consented to the Court's jurisdiction over Defendant and the subject matter of this action; consented to entry of this Final Judgment; waived findings of fact and conclusions of law; and waived any right to appeal from this Final Judgment:

I.

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that Defendant is permanently restrained and enjoined from violating Section 17(a) of the Securities Act of 1933 (the "Securities Act") [15 U.S.C. § 77q(a)] in the offer or sale of any security by the use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly:

      (a)     to employ any device, scheme, or artifice to defraud;

    (b)    to obtain money or property by means of any untrue statement of a material fact or any omission of a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

    (c)    to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that, as provided in Federal Rule of Civil Procedure 65(d)(2), the foregoing paragraph also binds the following who receive actual notice of this Final Judgment by personal service or otherwise:  (a) Defendant's officers, agents, servants, employees, and attorneys; and (b) other persons in active concert or participation with Defendant or with anyone described in (a).

## II.

IT IS HEREBY FURTHER ORDERED, ADJUDGED, AND DECREED that Defendant is permanently restrained and enjoined from violating, directly or indirectly, Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5 promulgated thereunder [17 C.F.R. § 240.10b-5], by using any means or instrumentality of interstate commerce, or of the mails, or of any facility of any national securities exchange, in connection with the purchase or sale of any security:

    (a)    to employ any device, scheme, or artifice to defraud;

    (b)    to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or

(c)     to engage in any act, practice, or course of business which operates or would

operate as a fraud or deceit upon any person.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that, as provided in

Federal Rule of Civil Procedure 65(d)(2), the foregoing paragraph also binds the following who

receive actual notice of this Final Judgment by personal service or otherwise:  (a) Defendant's

officers, agents, servants, employees, and attorneys; and (b) other persons in active concert or

participation with Defendant or with anyone described in (a).

III.

IT IS HEREBY FURTHER ORDERED, ADJUDGED, AND DECREED that Defendant

is permanently restrained and enjoined from violating, directly or indirectly, Section 15(a)(1) of

the Exchange Act [15 U.S.C. § 78o(a)(1)], by making use of the mails or any means or

instrumentality of interstate commerce to effect any transactions in, or to induce or attempt to

induce the purchase or sale of, securities (other than an exempted security or commercial paper,

bankers' acceptances, or commercial bills) without being registered with the Commission in

accordance with Section 15(b) of the Exchange Act [15 U.S.C. § 78o(b)], and without complying

with any exemptions promulgated pursuant to Section 15(a)(2) of the Exchange Act [15 U.S.C. §

78o(a)(2)].

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that, as provided in

Federal Rule of Civil Procedure 65(d)(2), the foregoing paragraph also binds the following who

receive actual notice of this Final Judgment by personal service or otherwise:  (a) Defendant's

officers, agents, servants, employees, and attorneys; and (b) other persons in active concert or

participation with Defendant or with anyone described in (a).

IV.

IT IS HEREBY FURTHER ORDERED, ADJUDGED, AND DECREED that Defendant

is permanently restrained and enjoined from violating, directly or indirectly, Section 20(b) of the

Exchange Act [15 U.S.C. § 78t(b)], by committing the violations described in Parts II and III

above through or by means of other persons.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that, as provided in

Federal Rule of Civil Procedure 65(d)(2), the foregoing paragraph also binds the following who

receive actual notice of this Final Judgment by personal service or otherwise:  (a) Defendant's

officers, agents, servants, employees, and attorneys; and (b) other persons in active concert or

participation with Defendant or with anyone described in (a).

V.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that Defendant is liable

for disgorgement in the amount of $918,147.31, representing profits gained as a result of the

conduct alleged in the Complaint, together with prejudgment interest thereon in the amount of

$71,549.24, for a total of $989,696.55.  In the event that Defendant is ordered to pay restitution

as part of his sentence in the criminal case before the United States District Court for the District

of New Jersey, titled United States v. Chamroonrat, 17-CR-00170-JLL (D.N.J.) (the "Criminal

Case"), then Defendant's monetary obligations under this Final Judgment, including all

outstanding pre and postjudgment interest, will be deemed satisfied, dollar-for-dollar, by the

amount of the restitution order.  The monetary obligations ordered by this Final Judgment shall

become due thirty (30) days after entry of the Judgment of Conviction in the Criminal Case, or

three (3) years from the date of the entry of this Final Judgment, whichever comes first.

Defendant may transmit payment electronically to the Commission, which will provide detailed ACH transfer/Fedwire instructions upon request.   Payment may also be made directly from a bank account via Pay.gov through the SEC website at http://www.sec.gov/about/offices/ofm.htm.  Defendant may also pay by certified check, bank cashier's check, or United States postal money order payable to the Securities and Exchange Commission, which shall be delivered or mailed to

Enterprise Services Center
Accounts Receivable Branch
6500 South MacArthur Boulevard
Oklahoma City, OK 73169

and shall be accompanied by a letter identifying the case title, civil action number, and name of this Court; Naris Chamroonrat as a defendant in this action; and specifying that payment is made pursuant to this Final Judgment.

Defendant shall simultaneously transmit photocopies of evidence of payment and case identifying information to the Commission's counsel in this action.  By making this payment, Defendant relinquishes all legal and equitable right, title, and interest in such funds and no part of the funds shall be returned to Defendant.  The Commission shall send the funds paid pursuant to this Final Judgment to the United States Treasury.

The Commission may enforce the Court's judgment for disgorgement and prejudgment interest by moving for civil contempt (and/or through other collection procedures authorized by law) at any time after the due date specified in this Final Judgment.  Defendant shall pay post judgment interest on any delinquent amounts pursuant to 28 U.S.C. § 1961.

VI.

IT IS HEREBY FURTHER ORDERED, ADJUDGED, AND DECREED that the Court is not ordering Defendant to pay a civil penalty. If at any time following the entry of the Final Judgment the Commission obtains information indicating that Defendant knowingly provided materially false or misleading information or materials to the Commission or in a related proceeding, the Commission may, at its sole discretion and without prior notice to the Defendant, petition the Court for an order requiring Defendant to pay a civil penalty. In connection with any such petition and at any hearing held on such a motion: (a) Defendant will be precluded from arguing that he did not violate the federal securities laws as alleged in the Complaint; (b) Defendant may not challenge the validity of this Final Judgment, the Consent, or any related Undertakings; (c) the allegations of the Complaint, solely for the purposes of such motion, shall be accepted as and deemed true by the Court; and (d) the Court may determine the issues raised in the motion on the basis of affidavits, declarations, excerpts of sworn deposition or investigative testimony, and documentary evidence without regard to the standards for summary judgment contained in Rule 56(c) of the Federal Rules of Civil Procedure. Under these circumstances, the parties may take discovery, including discovery from appropriate non-parties.

VII.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that the Consent is incorporated herein with the same force and effect as if fully set forth herein, and that Defendant shall comply with all of the undertakings and agreements set forth therein.

VIII.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that, for purposes of exceptions to discharge set forth in Section 523 of the Bankruptcy Code [11 U.S.C. § 523], the allegations in the complaint are true and admitted by Defendant, and further, any debt for disgorgement, prejudgment interest, civil penalty or other amounts due by Defendant under this Final Judgment or any other judgment, order, consent order, decree or settlement agreement entered in connection with this proceeding, is a debt for the violation by Defendant of the federal securities laws or any regulation or order issued under such laws, as set forth in Section 523(a)(19) of the Bankruptcy Code [11 U.S.C. § 523 (a)(19)].

IX.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that this Court shall retain jurisdiction of this matter for the purposes of enforcing the terms of this Final Judgment.

X.

There being no just reason for delay, pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, the Clerk is ordered to enter this Final Judgment forthwith and without further notice.

Dated: _September 18, 2017_

_Kevin McNulty_

UNITED STATES DISTRICT JUDGE
Hon. Kevin McNulty

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | |
| Plaintiff, | No. 16-CV-9403-KM-JBC |
| -against- | |
| NARIS CHAMROONRAT, YANIV AVNON, RAN ARMON, G SIX TRADING Y.R LTD., and ADAM L. PLUMER, | CONSENT OF DEFENDANT NARIS CHAMROONRAT |
| Defendants, | |
| -and- | |
| NKO HOLDINGS CO. LTD., | |
| Relief Defendant. | |

1.      Defendant Naris Chamroonrat ("Defendant") waives service of a summons and the complaint in this action, enters a general appearance, and admits the Court's jurisdiction over Defendant and over the subject matter of this action.

2.      Defendant has pleaded guilty to criminal conduct relating to certain matters alleged in the complaint in this action. Specifically, in United States v. Chamroonrat, 17-CR-00170-JLL (D.N.J.), Defendant pleaded guilty to violations of 18 U.S.C. § 371. In connection with that plea, Defendant admitted the facts set out in the transcript of his plea allocution that is attached as Exhibit A to this Consent. This Consent shall remain in full force and effect regardless of the existence or outcome of any further proceedings in United States v. Chamroonrat.

3.      Defendant hereby consents to the entry of the final Judgment in the form attached

hereto (the "Final Judgment") and incorporated by reference herein, which, among other things:

(a) permanently restrains and enjoins Defendant from violation of Section 17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77q(a)] and Sections 10(b) and 15(a)(1) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. §§ 78j(b), 78o(a)(1)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5], including, as to the Exchange Act provisions, against committing any such violations directly or indirectly through or by means of another person, as prohibited by Section 20(b) of the Exchange Act [15 U.S.C. § 78t(b)];

(b) finds Defendant liable for disgorgement in the amount of $918,147.31, plus prejudgment interest thereon in the amount of $71,549.24, and provides that Defendant's monetary obligations under the Final Judgment will be deemed satisfied, dollar-for-dollar, by the amount of restitution, if any, that Defendant may be ordered to pay in United States v. Chamroonrat.

4. Defendant acknowledges that the Court is not imposing a civil penalty. Defendant consents that if at any time following the entry of the Final Judgment the Commission obtains information indicating that Defendant knowingly provided materially false or misleading information or materials to the Commission or in a related proceeding, the Commission may, at its sole discretion and without prior notice to the Defendant, petition the Court for an order requiring Defendant to pay a civil penalty. In connection with the Commission's motion for civil penalties, and at any hearing held on such a motion: (a) Defendant will be precluded from arguing that he did not violate the federal securities laws as alleged in the Complaint; (b) Defendant may not challenge the validity of the Final Judgment, this Consent, or any related Undertakings; (c) the allegations of the Complaint, solely for the purposes of such motion, shall

be accepted as and deemed true by the Court; and (d) the Court may determine the issues raised in the motion on the basis of affidavits, declarations, excerpts of sworn deposition or investigative testimony, and documentary evidence without regard to the standards for summary judgment contained in Rule 56(c) of the Federal Rules of Civil Procedure.  Under these circumstances, the parties may take discovery, including discovery from appropriate non-parties.

5.      Defendant waives the entry of findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure.

6.      Defendant waives the right, if any, to a jury trial and to appeal from the entry of the Final Judgment.

7.      Defendant enters into this Consent voluntarily and represents that no threats, offers, promises, or inducements of any kind have been made by the Commission or any member, officer, employee, agent, or representative of the Commission to induce Defendant to enter into this Consent.

8.      Defendant agrees that this Consent shall be incorporated into the Final Judgment with the same force and effect as if fully set forth therein.

9.      Defendant will not oppose the enforcement of the Final Judgment on the ground, if any exists, that it fails to comply with Rule 65(d) of the Federal Rules of Civil Procedure, and hereby waives any objection based thereon.

10.     Defendant waives service of the Final Judgment and agrees that entry of the Final Judgment by the Court and filing with the Clerk of the Court will constitute notice to Defendant of its terms and conditions.  Defendant further agrees to provide counsel for the Commission, within thirty days after the Final Judgment is filed with the Clerk of the Court, with an affidavit or declaration stating that Defendant has received and read a copy of the Final Judgment.

11.    Consistent with 17 C.F.R. § 202.5(f), this Consent resolves only the claims asserted against Defendant in this civil proceeding.  Defendant acknowledges that no promise or representation has been made by the Commission or any member, officer, employee, agent, or representative of the Commission with regard to any criminal liability that may have arisen or may arise from the facts underlying this action or immunity from any such criminal liability. Defendant waives any claim of Double Jeopardy based upon the settlement of this proceeding, including the imposition of any remedy or civil penalty herein.  Defendant further acknowledges that the Court's entry of a permanent injunction may have collateral consequences under federal or state law and the rules and regulations of self-regulatory organizations, licensing boards, and other regulatory organizations.  Such collateral consequences include, but are not limited to, a statutory disqualification with respect to membership or participation in, or association with a member of, a self-regulatory organization.  This statutory disqualification has consequences that are separate from any sanction imposed in an administrative proceeding.  In addition, in any disciplinary proceeding before the Commission based on the entry of the injunction in this action, Defendant understands that he shall not be permitted to contest the factual allegations of the complaint in this action.

12.    Defendant understands and agrees to comply with the terms of 17 C.F.R. § 202.5(e), which provides in part that it is the Commission's policy "not to permit a defendant or respondent to consent to a judgment or order that imposes a sanction while denying the allegations in the complaint or order for proceedings."  As part of Defendant's agreement to comply with the terms of Section 202.5(e),  Defendant acknowledges the guilty plea for related conduct described in paragraph 2 above and: (i) will not take any action or make or permit to be made any public statement denying, directly or indirectly, any allegation in the complaint or

creating the impression that the complaint is without factual basis; (ii) will not make or permit to be made any public statement to the effect that Defendant does not admit the allegations of the complaint, or that this Consent contains no admission of the allegations; (iii) upon the filing of this Consent, Defendant hereby withdraws any papers filed in this action to the extent that they deny any allegation in the complaint; and (iv) stipulates for purposes of exceptions to discharge set forth in Section 523 of the Bankruptcy Code, 11 U.S.C. § 523, that the allegations in the complaint are true, and further, that any debt for disgorgement, prejudgment interest, civil penalty or other amounts due by Defendant under the Final Judgment or any other judgment, order, consent order, decree or settlement agreement entered in connection with this proceeding, is a debt for the violation by Defendant of the federal securities laws or any regulation or order issued under such laws, as set forth in Section 523(a)(19) of the Bankruptcy Code, 11 U.S.C. § 523(a)(19). If Defendant breaches this agreement, the Commission may petition the Court to vacate the Final Judgment and restore this action to its active docket. Nothing in this paragraph affects Defendant's: (i) testimonial obligations; or (ii) right to take legal or factual positions in litigation or other legal proceedings in which the Commission is not a party.

13.     Defendant hereby waives any rights under the Equal Access to Justice Act, the Small Business Regulatory Enforcement Fairness Act of 1996, or any other provision of law to seek from the United States, or any agency, or any official of the United States acting in his or her official capacity, directly or indirectly, reimbursement of attorney's fees or other fees, expenses, or costs expended by Defendant to defend against this action. For these purposes, Defendant agrees that Defendant is not the prevailing party in this action since the parties have reached a good faith settlement.

14.     In connection with this action and any related judicial or administrative

proceeding or investigation commenced by the Commission or to which the Commission is a party, Defendant (i) agrees to appear and be interviewed by Commission staff at such times and places as the staff requests upon reasonable notice; (ii) will accept service by mail or facsimile transmission of notices or subpoenas issued by the Commission for documents or testimony at depositions, hearings, or trials, or in connection with any related investigation by Commission staff; (iii) appoints Defendant's undersigned attorney as agent to receive service of such notices and subpoenas; (iv) with respect to such notices and subpoenas, waives the territorial limits on service contained in Rule 45 of the Federal Rules of Civil Procedure and any applicable local rules, provided that the party requesting the testimony reimburses Defendant's travel, lodging, and subsistence expenses at the then-prevailing U.S. Government per diem rates; and (v) consents to personal jurisdiction over Defendant in any United States District Court for purposes of enforcing any such subpoena.

15.     Defendant agrees that the Commission may present the Final Judgment to the Court for signature and entry without further notice.

16.     Defendant agrees that this Court shall retain jurisdiction over this matter for the

purpose of enforcing the terms of the Final Judgment.

Dated:  _Sept 14 , 2017_          _____

                                               Naris Chamroonrat

On _Sep 14_ , 20_17_ Naris Chamroonrat, a person known to me, personally appeared
before me and acknowledged executing the foregoing Consent.

                                               _____
                                               Notary Public
                                               Commission expires: _Dec 01, 2019_

Approved as to form:

_Edward Alon_
Edward E. Alon, Esq., Alon LLP
6303 Owensmouth Ave., 10th Floor
Woodland Hills, CA 91367
Attorney for Defendant

Exhibit A

1                    UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF NEW JERSEY
2                       Criminal No. 17-170(JLL)

3
        - - - - - - - - - - - - - - - -X
4                                      :
    UNITED STATES OF AMERICA           :        TRANSCRIPT OF
5                                      :         PROCEEDINGS
             -vs-                      :            PLEA
6                                      :
    NARIS CHAMROONRAT,                 :        May 11, 2017
7                                      :
             Defendant.                :
8                                      :
        - - - - - - - - - - - - - - -X        Newark, New Jersey
9

10

11

12

13
        B E F O R E:
14
                        THE HONORABLE JOSE L. LINARES,
15              UNITED STATES DISTRICT COURT JUDGE

16

17

18

19

20
            Pursuant to Section 753 Title 28 United States Code, the
21      following transcript is certified to be an accurate record
        as taken stenographically in the above-entitled proceedings.
22      S/Phyllis T. Lewis, CRR, CRCR
        - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
23                  PHYLLIS T. LEWIS, C.C.R., C.R.C.R.
           Official Court Reporter - United States District Court
24                      Newark, New Jersey  07101
                        (732) 735-4522
25

```
 1     A P P E A R A N C E S:

 2              WILLIAM E. FITZPATRICK, Acting U.S. Attorney
                970 Broad Street
 3              Newark, New Jersey 07102
                973-645-2800
 4              BY:  NICHOLAS P. GRIPPO, Assistant U.S. Attorney
                for the Government.
 5

 6              ALON, LLP
                6303 Owensmouth Avenue
 7              Woodland Hills, California 91367
                818-858-0050
 8              BY:  EDWARD E. ALON, ESQ.
                Attorney for the Defendant.
 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

3

1                    THE CLERK:  All rise.

2                    THE COURT:  Good morning, Counsel.

3                    MR. GRIPPO:  Good morning, your Honor.

4                    THE COURT:  This is in the matter of United States

5          versus Naris Chamroonrat.  Is that how you pronounce it?

6                    MR. ALON:  Yes, your Honor.

7                    THE COURT:  Your appearances for the record,

8          please.

9                    MR. GRIPPO:  Good morning, your Honor.

10                   Nicholas Grippo, Assistant United States Attorney,

11         on behalf of the Government.

12                   MR. ALON:  Good morning, your Honor.

13                   Edward Alon on behalf of Naris Chamroonrat who is

14         present and on bond.

15                   THE COURT:  All right.  I have received some

16         documents in connection with this matter that I would like

17         to set forth on the record.

18                   I have a copy of a proposed plea agreement, which I

19         am going to mark as Court's Exhibit Number 4.  I note for

20         the record that the plea agreement appears to have been

21         signed by Mr. Alon and his client.

22                   I also note that it does contain a Schedule A,

23         which is attached to the plea agreement, which contains a

24         waiver of appeal at Paragraph 9 on Page 8 indicating a

25         waiver of appeal at Level 21 of the advisory guideline

1    ranges.

2           I also received a copy of the defendant's

3    application for permission to enter a plea of guilty.  I

4    also note for the record that that application has been duly

5    completed and signed by both counsel and his client.  I will

6    mark that is as Court's Exhibit 3.

7           I also have a copy of the information in this case,

8    which charges the defendant inter alia with conspiracy to

9    commit securities fraud.  I am going to mark the information

10    as Court's Exhibit Number 1.  And since that sets forth a

11    felony, I have also received the original waiver of the

12    indictment signed by Mr. Alon and his client, and I am going

13    to mark the waiver of indictment as Court's Exhibit Number

14    2.

15           Having said that, Counsel, Mr. Alon, I understand

16    that you and the Government have reached this proposed plea

17    agreement, and you now wish to have a Rule 11 hearing to see

18    if the Court would approve the plea.  Is that correct?

19           MR. ALON:  That is correct, your Honor.

20           THE COURT:  Lissette, do you want to swear in the

21    defendant.

22           THE CLERK:  Left hand on the Bible and raise your

23    right hand.

24    N A R I S   C H A M R O O N R A T, having been duly sworn,

25    testified as follows:

```
 1                THE CLERK:  State your name.

 2                MR. CHAMROONRAT:  Naris Chamroonrat.

 3                THE COURT:  Mr. Chamroonrat, I am going to ask you

 4       some questions, and I am going to give you some information

 5       today.

 6                You are under oath, which means you have to respond

 7       to any questions that I ask or your attorney asks or the

 8       Government asks truthfully, because otherwise the Government

 9       can turn around and file another charge against you, that of

10       making a false statement under oath or what is called

11       perjury.  Do you understand that?

12                MR. CHAMROONRAT:  I understand, your Honor.

13                THE COURT:  Therefore, it is very important that

14       you understand all of the questions that are asked and all

15       of the information I give you.

16                If at any time you need to speak to your lawyer,

17       you tell me, and I will stop and give you an opportunity to

18       do that, okay?

19                MR. CHAMROONRAT:  Yes, your Honor.

20                THE COURT:  Have you taken any drugs, medication,

21       alcohol, anything at all, which is in any way affecting your

22       ability to understand what you are doing here today?

23                MR. CHAMROONRAT:  I have taken blood pressure

24       medication, but it shouldn't affect me.

25                THE COURT:  Does that medication in any way affect
```

```
 1          your ability in any way to understand what you are doing?

 2                    MR. CHAMROONRAT:  No, your Honor.

 3                    THE COURT:  Have you had enough time to speak to

 4          your lawyer with regard to this matter today?

 5                    MR. CHAMROONRAT:  Yes, your Honor.

 6                    THE COURT:  Have you had an opportunity to discuss

 7          the charges that are pending against you in the information

 8          that has been filed against you?

 9                    MR. CHAMROONRAT:  Yes, your Honor.

10                    THE COURT:  Has your attorney answered all of your

11          questions to your satisfaction?

12                    MR. CHAMROONRAT:  Yes, he has, your Honor.

13                    THE COURT:  Are there any questions that you need

14          to ask me before we begin?

15                    MR. CHAMROONRAT:  No, your Honor.

16                    THE COURT:  Okay.  Now, please tell me your full

17          name.

18                    MR. CHAMROONRAT:  Naris Chamroonrat.

19                    THE COURT:  And how old are you, sir?

20                    MR. CHAMROONRAT:  I'm 33 years old.

21                    THE COURT:  And what is the level of your

22          education?

23                    MR. CHAMROONRAT:  Bachelor's degree.

24                    THE COURT:  I take it then you are able to read and

25          understand the English language?
```

1            MR. CHAMROONRAT:  Yes, I can, your Honor.

2            THE COURT:  Have you received prior to this hearing

3    a copy of the proposed plea agreement letter?

4            MR. CHAMROONRAT:  Yes, I have, your Honor.

5            THE COURT:  And did you have an opportunity to read

6    it?

7            MR. CHAMROONRAT:  Yes, I have, your Honor.

8            THE COURT:  All right.

9            Before we go back to that, let me ask you some

10   questions about you in particular.

11           Do you have any history of addiction with either

12   drugs, alcohol, gambling, anything like that?

13           MR. CHAMROONRAT:  No, your Honor.

14           THE COURT:  Ever been treated for any type of

15   psychological or psychiatric problems?

16           MR. CHAMROONRAT:  No, your Honor.

17           THE COURT:  Are you having any problems

18   understanding anything that I said so far?

19           MR. CHAMROONRAT:  No, your Honor.

20           THE COURT:  All right.  Let me go through a couple

21   of things then.

22           Number one:  The charges that are pending against

23   you are a felony.  Specifically, the information that you

24   intend to plead guilty to charges that from December of 2013

25   to June of 2015, here in the District of New Jersey and

8

1      elsewhere, you conspired with others to commit an offense

2      against the United States, specifically securities fraud,

3      which if proven, would constitute a felony.

4            As a result of that, you have a right to have this

5      matter considered by a grand jury and have the grand jury

6      determine whether or not to indict you on those charges.

7      Now, that is a constitutional right that you have.  However,

8      you can waive that right and have this matter proceed here

9      today with the charges being brought by way of the

10     information.

11           If you do not want to waive the right, then the

12     Government would have to present the case to the grand jury,

13     and the grand jury would have to determine whether there is

14     a sufficient basis to charge you.

15           A grand jury is made up to 23 people.  At least 12

16     must vote for an indictment before you may be charged.  So

17     if the grand jury finds that there is probable cause to

18     believe that a crime was committed, and that you are the

19     person who committed the crime, they would charge you.

20     Otherwise, they would not.

21           However, if you waive your right to indictment by

22     the grand jury, then there is not going to be a

23     consideration by the grand jury, and we will proceed today

24     with the charges being brought against you by way of an

25     information.

9

1                Do you wish to waive your right to indictment by

2        the grand jury?

3                MR. CHAMROONRAT:  Yes, your Honor.

4                THE COURT:  And have you discussed this with your

5        attorney?

6                MR. CHAMROONRAT:  I have discussed it with my

7        attorney, your Honor.

8                THE COURT:  All right.

9                Counsel, do you see any reason why your client

10       should not be counseled to waive his right to indictment by

11       the grand jury?

12               MR. ALON:  No, your Honor.

13               THE COURT:  All right.

14               So now I want to talk to you about the plea

15       agreement.

16               Before I do that, I am going to have Mr. Grippo

17       summarize the terms of the plea agreement in general.  I

18       want you to listen to Mr. Grippo, and then I am going to ask

19       you some questions about the plea agreement.

20               Mr. Grippo?

21               MR. GRIPPO:  Thank you, your Honor.

22               Your Honor, the plea agreement, which is dated

23       January 27th, 2017, requires Mr. Chamroonrat to plead guilty

24       to a one-count information charging him with conspiracy to

25       commit securities fraud.  The conspiracy took place between

1    in or about December of 2013 and until in or about June of

2    2015.

3           If the defendant enters a guilty plea and is

4    sentenced on that charge, the Government in exchange agrees

5    not to prosecute or pursue any additional criminal charges

6    in connection with the conspiracy charged in the

7    information.

8           The plea agreement sets forth the maximum penalties

9    associated with the charge, which include a potential prison

10   term of up to five years, and a fine of either 250 -- the

11   greater of $250,000 or twice the gross amount of any gain or

12   loss resulting from the offense.

13          There is also a term of supervised release that the

14   Court can impose following any term of imprisonment, and

15   that would be a term of not more than three years, your

16   Honor.

17          In addition to that, the defendant agrees to make

18   full restitution in connection with any victims of this

19   offense and agrees that at the time of sentencing, such

20   restitution will be appropriate in the amount of $1.4

21   million, which is the approximate amount of the loss

22   resulting from this scheme, your Honor.

23          There is, as the Court mentioned earlier, a

24   Schedule A attached to the plea agreement, and that Schedule

25   A outlines a number of stipulations that the parties have

1      reached regarding the application of the sentencing
2      guidelines in this case.
3           And specifically, the parties have agreed to a
4      total offense level of 21, which arises from a base offense
5      level of 6, and then two, it is a separate specific offense
6      characteristics.  One, a 14-level increase because the
7      criminal conspiracy involved a gain to the defendants of
8      approximately $1.4 million.  There is a two-level
9      enhancement because the scheme involved at least ten or more
10     victims, and the parties also agreed that a substantial part
11     of the scheme was committed outside of the United States,
12     and that results in an additional two-level enhancement.
13          So with those enhancements and the base offense
14     level, and also factoring in acceptance of responsibility
15     points, the parties have agreed that the total offense level
16     is 21.
17          There is an appellate waiver in the Schedule A
18     attachment, your Honor, and under the terms of that waiver
19     the parties agree that if the Court sentences the defendant
20     within or below offense Level 21, the defendant cannot file
21     an appeal or other post conviction application challenging
22     that sentence.  And if the Court imposes a sentence within
23     or above the sentencing range applicable to an offense Level
24     21, the Government cannot file an appeal or otherwise
25     challenge the sentence.

12

1          There is also an Immigration provision in the plea

2     agreement, your Honor, that simply notes that a conviction

3     on this offense could result in Immigration consequences,

4     including the defendant being removed from the United States

5     or not allowed back into the United States.

6          And, your Honor, I believe those are the primary

7     terms of the agreement.

8          THE COURT:  Thank you.

9          Counsel, does that coincide with your understanding

10    of the plea agreement?

11         MR. ALON:  Yes, your Honor.

12         THE COURT:  Now, going back to you, Mr.

13    Chamroonrat, does it coincide with your understanding of the

14    plea agreement?

15         MR. CHAMROONRAT:  Yes, your Honor.

16         THE COURT:  One of the things that counsel for the

17    Government just spoke about are the Immigration

18    consequences.

19         Are you a United States citizen?

20         MR. CHAMROONRAT:  Yes, I am, your Honor.

21         THE COURT:  So then those Immigration consequences

22    probably do not apply to you, but we put them in there

23    because in the event that you are not a citizen, you could

24    have a problem with Immigration.  But if you are citizen,

25    that shouldn't apply.

13

1              MR. GRIPPO:  Your Honor, just to add to that, the

2    defendant is also a citizen of Thailand and a resident of

3    Thailand, but our understanding is he was born and raised in

4    the United States and is a citizen here as well.

5              THE COURT:  Okay.

6              Now, did you have an opportunity to read the plea

7    agreement and consult with your attorney about the plea

8    agreement?

9              MR. CHAMROONRAT:  Yes, I have, your Honor.

10             THE COURT:  And after reading the plea agreement,

11   did you ask questions of your lawyer about the plea

12   agreement letter?

13             MR. CHAMROONRAT:  Yes, I have, your Honor.

14             THE COURT:  And do you have any questions you want

15   to ask me or your lawyer at this time about the plea

16   agreement letter?

17             MR. CHAMROONRAT:  No questions, your Honor.

18             THE COURT:  Do you feel that you have an

19   understanding of the plea agreement based on your

20   conversations with your lawyer and your own reading of the

21   plea agreement?

22             MR. CHAMROONRAT:  Yes, your Honor.

23             THE COURT:  That plea agreement is supposed to set

24   forth all of the things that you get in exchange for

25   pleading guilty.

1        Do you feel that the plea agreement sets forth

2   accurately what you expect to get in exchange for pleading

3   guilty?

4           MR. CHAMROONRAT:  Yes, your Honor.

5           THE COURT:  After you had an opportunity to read

6   the plea agreement, and after you had an opportunity to

7   discuss it with your attorney, did you also sign the plea

8   agreement letter?

9           MR. CHAMROONRAT:  Yes, I did, your Honor.

10          THE COURT:  Could you turn to Page 6 of the plea

11  agreement letter, please?

12          Is that your signature at Page 6?

13          MR. CHAMROONRAT:  Yes, it is, your Honor.

14          THE COURT:  And, Mr. Alon, is that your signature

15  at Page 6 as well?

16          MR. ALON:  Yes, your Honor.

17          THE COURT:  Mr. Grippo, is that your signature and

18  that of Murphy at Page 5?

19          MR. GRIPPO:  Yes, it is, your Honor.

20          THE COURT:  Has anyone forced or coerced or

21  threatened you in any way into entering into this plea

22  agreement?

23          MR. CHAMROONRAT:  No, your Honor.

24          THE COURT:  Has anyone made any promises to you

25  that are in any way different than what is in the plea

15

1      agreement letter?

2              MR. CHAMROONRAT:  No, your Honor.

3              THE COURT:  Do you understand, sir, that the plea

4      agreement is a contract between you and the Government,

5      which binds you to the terms of the plea agreement and also

6      binds the Government, but it does not bind the Court, do you

7      understand that?

8              MR. CHAMROONRAT:  I understand, your Honor.

9              THE COURT:  What that means is that although I

10     generally go along with the terms of the plea agreement, I

11     do not have to, and you would not be allowed to take back

12     your guilty plea, if I were to enter a sentence that is more

13     harsh than you may anticipate under the plea agreement.  Do

14     you understand that?

15             MR. CHAMROONRAT:  I understand, your Honor.

16             THE COURT:  I also want to explain to you that

17     there are other consequences to pleading guilty today.

18             If I were to accept your guilty plea today, you

19     would be adjudged guilty of the offense charged in the

20     indictment as of today, and as of today you would be a

21     convicted felon, which would mean you would lose some

22     valuable civil rights, such as the right to hold public

23     office, the right to vote, the right to serve on a jury, the

24     right to possess and own a firearm.  Do you understand that?

25             MR. CHAMROONRAT:  I understand, your Honor.

```
1              THE COURT:  Also, another very important
2    consequence is that if you do plead guilty, and if I accept
3    your guilty plea, you will be adjudged guilty of the offense
4    charged in the information without a trial.  You have a
5    constitutional right to a trial at which time you would have
6    a right to be represented by counsel and have counsel
7    cross-examine the witnesses against you.
8              You would have the right to see and hear the
9    evidence against you.
10             You would not have to testify or produce any
11   evidence or even cross-examine witnesses because you do not
12   have the burden to prove yourself innocent.  It is the
13   Government's burden to prove you guilty.
14             I would tell the jury that you are presumed
15   innocent, and that that presumption of innocence continues
16   until the end of the trial when they are convinced beyond a
17   reasonable doubt of your guilt, and that that presumption of
18   innocence doesn't change until that moment.
19             I would also tell them that they could not hold it
20   against you, if you decide not to testify or produce any
21   evidence because the burden is not on you.
22             You would also have a right to an attorney in the
23   event of a conviction for appeal.
24             However, by pleading guilty, you are waiving not
25   only your right to go to trial, but all of the rights
```

```
1     associated with the trial that I just explained.  Do you
2     understand that?
3             MR. CHAMROONRAT:  I understand, your Honor.
4             THE COURT:  Also, if you do plead guilty, I am
5     going to schedule a date for your sentencing in this matter,
6     which will come at a future date, and at the time of the
7     sentencing I am going to consider a lot of different things,
8     of course, the presentence report that is going to be
9     provided to me by the Probation Department, and I am also
10    going to consider the sentencing guidelines and the statutes
11    that apply to your case.
12            Now, having said that, I want to tell you that the
13    statutes that apply to this securities fraud violation and
14    the securities fraud conspiracy carry the following
15    penalties under the statute.
16            Under the statute, a violation of Title 18 Section
17    371 carries a maximum penalty of five years imprisonment and
18    up to $250,000 or twice the gross amount of any pecuniary
19    loss or gain that anyone may have received as a result of
20    your offense.
21            In addition, if I do impose a fine, I can also
22    order that interest be paid on that fine, and you will also
23    be subjected to pay a one-hundred-dollar assessment at the
24    time of the sentencing, which is mandatory.
25            If I do give you jail time, when you come out of
```

```
 1    jail, you would be placed on supervised release for up to

 2    three years, which begins at the time when you come out.

 3              While on supervised release, you will have to

 4    follow certain conditions.  If you fail to follow those

 5    conditions or violate them, I could put you back in jail for

 6    an additional two years.

 7              Those are all potential consequences under the

 8    statutes.  Do you understand that?

 9              MR. CHAMROONRAT:  I understand, your Honor.

10              THE COURT:  Now, aside from the statute, I am also

11    going to consult the United States Sentencing Guidelines.

12              Now, the guidelines, which are issued by the

13    Sentencing Commission are not mandatory on this Court.  That

14    means I don't have to follow them.  However, I do consult

15    them because they give me valuable information about things

16    that I ought to consider in determining the appropriate

17    sentence.

18              Guidelines set forth many different factors for my

19    consideration, such as whether or not you have a prior

20    criminal record, whether or not you pled guilty, like you

21    are trying to plead guilty here today, whether or not you

22    cooperated with the Government, whether or not you

23    obstructed justice, who were the victims of your offense,

24    what was the amount of the loss to the victims, what role

25    did you play in the commission of the offense and vis-a-vis
```

```
1    other people, and many other different factors that I don't
2    know if they apply to you or not.
3              After consideration of the factors, the guidelines
4    suggest certain levels of sentencing and certain
5    circumstances under which I can sentence you either above a
6    certain level or below a certain level.  I don't have all of
7    that information today, so I can't tell you exactly where
8    you are going to fall within the guidelines.  And I know
9    your attorney may have told you where he thinks you are
10   going to fall, and the Government may have mentioned where
11   they think you're going to fall.
12             Those are educated assessments by them as to what
13   your exposure may be under the guidelines, but at the end of
14   the day, it is my guideline analysis that is going to govern
15   in connection with this matter, not their assessment.  If my
16   guideline analysis leads me to a level different than what
17   they may have told you, it is my guideline analysis that is
18   going to govern, and not theirs.  Do you understand that?
19             MR. CHAMROONRAT:  I understand, your Honor.
20             THE COURT:  Also, because you are in the federal
21   system, there is no parole.  So what that means is if you
22   were to get jail time, you would actually have to do that
23   time except for any good time credits that you may earn
24   while in jail.  Do you understand that as well?
25             MR. CHAMROONRAT:  I understand, your Honor.
```

1           THE COURT:  Now, normally you and the Government

2     have the right to appeal any sentence that I may issue in

3     connection with this matter, if you feel that I made some

4     kind of legal error.

5           Now, in looking at your plea agreement, I notice

6     that in Schedule A, which sets forth all of the

7     stipulations, which are facts you are agreeing about, one of

8     those stipulations is that you are waiving your right to

9     appeal, if I were to sentence you at a Level 25 or less.  Do

10    you understand that?

11          MR. ALON:  Your Honor --

12          THE COURT:  I'm sorry.  Did I make a mistake on

13    that?

14          MR. ALON:  -- your Honor, I believe it is 21.

15          THE COURT:  21.  Hold on.  I was going by memory.

16    I shouldn't have done that.

17          MR. ALON:  Page 8.

18          THE COURT:  Correct.  I'm sorry.

19          So it is a Level 21 or less.  So if I were to

20    sentence you at a Level 21 or less, you would be waiving

21    your right to appeal in connection with this matter.  Do you

22    understand that?

23          MR. CHAMROONRAT:  I understand, your Honor.

24          THE COURT:  And the Government is also indicating

25    that if I were to sentence you at a Level 21 or more in

1    their case, they would not appeal.  Do you understand that?

2              MR. CHAMROONRAT:  I understand, your Honor.

3              THE COURT:  And have you gone over this waiver of

4    appeal with your attorney?

5              MR. CHAMROONRAT:  Yes, I have, your Honor.

6              THE COURT:  Do you have any questions that you want

7    to ask me at this time with regard to that?

8              MR. CHAMROONRAT:  No questions, your Honor.

9              THE COURT:  All right.

10             Now, in order for me to determine whether or not I

11   would accept your plea in this case, I would need to hear

12   testimony from you about what it is that you did in this

13   case.

14             The reason for that is that before I can accept

15   your guilty plea, I have to be convinced based on the facts

16   that you are in fact guilty of what you are trying to plead

17   guilty to.

18             So what I am going to do now is I am going to have

19   Mr. Grippo ask you some questions about your involvement in

20   the alleged securities fraud, and then after you testify, I

21   will give you an opportunity to speak to your lawyer one

22   last time, and then I will ask you how you want to plead,

23   okay?

24             MR. CHAMROONRAT:  Yes, your Honor.

25             THE COURT:  All right.  Mr. Grippo?

22

1          MR. GRIPPO:  Thank you, your Honor.

2          Mr. Chamroonrat, between in or around December of

3    2013 and in or around June of 2015, did you agree with

4    others to participate in a scheme to defraud customers of

5    Nonko Trading, a purported day trading firm?

6          MR. CHAMROONRAT:  Yes.

7          MR. GRIPPO:  Specifically, did you and your

8    co-conspirators solicit individuals to open day trading

9    accounts with Nonko and to wire thousands of dollars to

10   Nonko for the purpose of funding those accounts?

11         MR. CHAMROONRAT:  Yes.

12         MR. GRIPPO:  Did you take money from some of those

13   day traders and use the money for personal expenses or other

14   unauthorized purposes, rather than using it to fund

15   securities trading accounts?

16         MR. CHAMROONRAT:  Yes.

17         MR. GRIPPO:  And I am going to refer to those

18   individuals as the "victim investors."

19         As part of the scheme, did you and your

20   co-conspirators give the victim investors access to

21   simulator or demo trading accounts that were not capable of

22   processing live orders to buy or sell securities?

23         MR. CHAMROONRAT:  Yes.

24         MR. GRIPPO:  Did you or your co-conspirators

25   falsely represent to those victim investors that the

```
 1        simulator or demo accounts were actually live trading
 2        accounts?
 3                  MR. CHAMROONRAT:  Yes.
 4                  MR. GRIPPO:  Did you and your co-conspirators do
 5        this to cover up the theft of the victim investors account
 6        deposit money?
 7                  MR. CHAMROONRAT:  Yes.
 8                  MR. GRIPPO:  Did you and your co-conspirators
 9        select as victims only those customers who you believed
10        would not be profitable day traders and would be less likely
11        to seek to withdraw funds from their accounts?
12                  MR. CHAMROONRAT:  Yes.
13                  MR. GRIPPO:  And instead, did you and your
14        co-conspirators limit the scheme to inexperienced and
15        unsophisticated traders because you believed it was more
16        likely that those customers would simply think that they had
17        lost their money trading in the open markets, rather than to
18        the scheme to defraud?
19                  MR. CHAMROONRAT:  Yes.
20                  MR. GRIPPO:  Now, in or around September of 2014,
21        did you and your co-conspirators launch a new trading
22        platform called Logix through which you continued the
23        scheme?
24                  MR. CHAMROONRAT:  Yes.
25                  MR. GRIPPO:  Did you, in fact, continue the scheme
```

1      by soliciting new investors or new victim investors to set

2      up accounts on Logix or by transferring existing victim

3      investors to Logix?

4                MR. CHAMROONRAT:  Yes.

5                MR. GRIPPO:  And did you and your co-conspirators

6      place the victim investors, who set up accounts through

7      Logix on demo or simulator accounts, while portraying those

8      accounts as real trading accounts?

9                MR. CHAMROONRAT:  Yes.

10               MR. GRIPPO:  Throughout the time period of the

11     scheme, did the victim investors send their account deposit

12     money to bank accounts outside of the United States that you

13     controlled?

14               MR. CHAMROONRAT:  Yes.

15               MR. GRIPPO:  And did at least some of the victim

16     investors transfer funds to Nonko through interstate wires?

17               MR. CHAMROONRAT:  Yes.

18               MR. GRIPPO:  Did you distribute some of that money

19     to your co-conspirators and to other bank accounts you

20     controlled?

21               MR. CHAMROONRAT:  Yes.

22               MR. GRIPPO:  And did the victim investors include

23     individuals inside and outside of the United States?

24               MR. CHAMROONRAT:  Yes.

25               MR. GRIPPO:  Do you acknowledge that the scheme

1          involved more than ten victim investors, and that a

2          substantial portion of the scheme was carried out from

3          outside of the United States?

4                    MR. CHAMROONRAT:  Yes.

5                    MR. GRIPPO:  And do you acknowledge that the

6          approximate amount that you and your co-conspirators stole

7          from the victim investors was $1.4 million?

8                    MR. CHAMROONRAT:  Yes.

9                    MR. GRIPPO:  Now, in committing all of these acts,

10         did you act knowingly, intentionally and willfully?

11                   MR. CHAMROONRAT:  Yes.

12                   MR. GRIPPO:  And are you pleading guilty today

13         because you are, in fact, guilty of the crime charged in the

14         information, that is, conspiracy to commit securities fraud?

15                   MR. CHAMROONRAT:  Yes.

16                   MR. GRIPPO:  And do you have additional information

17         about this conspiracy and the conduct of your

18         co-conspirators that you could provide, if called upon to do

19         so?

20                   MR. CHAMROONRAT:  Yes.

21                   MR. GRIPPO:  Your Honor, the Government represents

22         to the Court that had this case proceeded to a trial, the

23         Government would have been prepared to prove to a jury

24         beyond a reasonable doubt all of the essential elements of

25         the charge set forth in the information.

```
 1              The Government would be prepared to do that through

 2      witness testimony, documents, financial records and other

 3      evidence.  The Government believes that these

 4      representations coupled with Mr. Chamroonrat's answers to

 5      the questions that I just asked provide a sufficient basis

 6      for the Court to accept his guilty plea to the information.

 7              THE COURT:  Okay.

 8              Do you wish to speak to your lawyer before I ask

 9      you to enter your plea in this case?

10              MR. CHAMROONRAT:  No, your Honor.

11              THE COURT:  How do you wish to plead to the charges

12      set forth in the information, guilty or not guilty?

13              MR. CHAMROONRAT:  Guilty.

14              THE COURT:  Look, I think that you are an educated

15      person and a smart person.  I think you understand what you

16      are doing here today.  I think you understand the

17      consequences.  And based on the testimony that you just

18      gave, I think there is a factual basis for you to plead

19      guilty, so I am going to accept your guilty plea as a

20      knowing and voluntary plea supported by the facts.

21              I am going to schedule your sentencing for

22      September 20th of this year at 11 o'clock in the morning.

23              Now, between now and then, the Probation Department

24      is going to prepare a presentence report in connection with

25      this matter.  The presentence report is a very important
```

1      document that I am going to use in determining what is an

2      appropriate sentence in your case.  I suggest that you be

3      thorough and accurate with the information you give

4      Probation.

5           I also suggest that you have your lawyer present

6      when you meet with Probation, so that he can represent you

7      in that process, and also you have a right to read the

8      Probation Department report before I see it.  In the event

9      that there is anything there that you believe is wrong, then

10     you can tell your lawyer, and your lawyer can either attempt

11     to work it out with Probation or make the appropriate motion

12     before this Court.

13          Also, I am going to allow you to stay out pending

14     your sentencing under the same bail conditions that you had.

15     It is very important, however, that you show up for your

16     sentence.  You know, if for some reason, there is some kind

17     of an emergency or a catastrophe that prevents you from

18     being here, you have to make sure that your lawyer reaches

19     out to the Court in a timely fashion, otherwise I will issue

20     a bench warrant for your arrest.

21          Do you understand that?

22          MR. CHAMROONRAT:  Yes, I do, your Honor.

23          THE COURT:  Okay.

24          Now, Counsel, if this date that I gave you turns

25     out not to be practical under the circumstances, just talk

1       to my Deputy Clerk and work it out.

2               I do remind both of you that there is a standing

3       order dating back to 2000 in this Court, that requires you

4       to submit your presentence submissions ten days prior to the

5       date of sentencing, okay?

6               MR. GRIPPO:  Yes, your Honor.

7               Thank you.

8               MR. ALON:  Thank you, your Honor.

9               (Court and Clerk confer)

10              THE COURT:  Thank you.

11              THE CLERK:  All rise.

12              (The matter concluded)

13

14

15

16

17

18

19

20

21

22

23

24

25